UNITED STATES of America, Appellee,

v.

Anthony VULPIS, Rosedale Carting, Inc., August Recycling, Inc., Stage Carting, Inc., Angelo Paccione, National Carting, Inc., Defendants–Appellants.

Nos. 1160, 1323, 1161, Dockets 91–1686, 91–1687, 91–1734.

United States Court of Appeals, Second Circuit.

Argued April 1, 1992.

Decided April 9, 1992.

Jeffrey B. Sklaroff, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, Daniel C. Richman, Asst. U.S. Atty., New York City, on the brief), for appellee.

Barbara L. Hartung, New York City, for defendant-appellant Anthony Vulpis.

LaRossa Mitchell & Ross, New York City (Michael S. Ross, of counsel), for defendant-appellant Rosedale Carting, Inc.

Dershowitz & Eiger, P.C., New York City (Nathan Z. Dershowitz, New York City, of counsel) for defendants-appellants August Recycling, Inc., Stage Carting, Inc., Angelo Paccione, and National Carting, Inc., joined the brief filed by defendants Anthony Vulpis and Rosedale Carting, Inc.

Before: KEARSE and MAHONEY, Circuit Judges, and RESTANI, Judge *.

KEARSE, Circuit Judge:

This case returns to us from the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge,* following our remand in *United States v. Paccione,* 948 F.2d 851 (2d Cir. 1991) *("Paccione I"),* which ruled that defaults by defendants Anthony Vulpis, *et al.,* on their agreement to pay the government $22 million in cash within 90 days after the effective date of the agreement, did not entitle the government to receive title to defendants' assets in lieu of the agreed $22 million. We remanded for further proceedings in accordance with Fed. R.Civ.P. 69(a) and applicable state procedures. On remand, by order dated November 18, 1991, the district court appointed a receiver pursuant to N.Y.Civ.Prac.L. & R. ("CPLR") § 5228 (McKinney 1978) ("Receiver Order"). On this appeal, defendants Anthony Vulpis and Angelo Paccione (collectively the "individual defendants") and Rosedale Carting, Inc., August Recycling, Inc., Stage Carting, Inc., and National Carting, Inc. (collectively the "corporate defendants"), challenge the district court's appointment of a receiver, contending principally that it was foreclosed by *Paccione I.* We disagree.

## I. BACKGROUND

The present appeal arises out of the government's prosecution of appellants and others for, *inter alia,* violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988), in connection with unlawful

---

* Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designa- tion.

waste dumping operations. The factual background of the prosecution is more fully set forth in *Paccione I* and *United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991) (*"Paccione II"*) (affirming convictions), familiarity with which is assumed. Upon their convictions, defendants agreed jointly and severally, in a June 1990 agreement so-ordered by the district court ("Agreement"), to pay $22 million to the government within 90 days in satisfaction of all fines, forfeitures, and restitution otherwise payable on account of their convictions. They also agreed to the appointment of a court-appointed trustee to oversee the operation of the corporate defendants until such time as the government received the agreed $22 million, and agreed that any sale of an interest in the defendant corporations to any purchaser would be subject to approval by the government.

None of the $22 million was paid. On May 10, 1991, the court entered an order under § 1963(m) of RICO, 18 U.S.C. § 1963(m), transferring title to the corporate defendants' assets to the government to substitute for the unpaid $22 million. In *Paccione I*, we reversed this order, concluding that since the Agreement called for payment of precisely $22 million, "a substitution of assets [wa]s wholly inconsistent with the terms of the agreement." 948 F.2d at 857. We stated:

> Section 1963(m) provides a means of assuring that the defendant parts with the fruits of his racketeering labors. Here, however, the agreement in question provides its own mechanism for separating the defendants from the $22 million cash payments due. Under the agreement, the government had the right to obtain a $22 million money judgment by filing the affidavits of confessions of judgment and then to enforce the money judgment thereby obtained in accordance with Rule 69(a) of the Federal Rules of Civil Procedure and applicable state procedures.

*Id.* at 855–56. Rule 69(a) provides generally that, assuming no controlling federal statute, proceedings in aid of execution on a federal judgment are to be in accordance with the practice and procedure of the state in which the district court sits.

Accordingly, we concluded that the government was required to pursue the remedies available under New York law in order to enforce its judgment. We proceeded to illustrate by discussing New York provisions for sale of property by the local sheriff at public auction, and noted that "New York law requires that the sale of real property to satisfy a money judgment must be conducted in a commercially reasonable manner." 948 F.2d at 856. We did not thereby indicate, however, that a sheriff's sale was the only New York state remedy that could be used. *Paccione I* merely required use of state procedures in order to obtain a fair price for the assets to be sold in satisfaction of the $22 million judgment. It did not preclude the district court from authorizing the appointment of a receiver pursuant to CPLR § 5228(a), or from adopting any other appropriate state procedure, to achieve that end.

█ Under New York law, a receivership to sell the judgment debtor's property is appropriate when, in the judgment of the court, a public auction is inadequate either because it is unlikely to produce significant bids, *see, e.g.*, CPLR § 5228, Siegel Practice Commentaries, C5228:2 (McKinney 1978) ("It may happen that the market for a particular item of the judgment debtor's property is small, or special. A sale pursuant to an execution, which is conducted by the sheriff through ... public auction ... may be unlikely to produce significant bids. In such an instance it is appropriate to have a receiver appointed"), or because leaving the property in the hands of the judgment debtor creates a risk of fraud or insolvency, *see, e.g.*, *Melluzzo v. Melluzzo*, 62 A.D.2d 1061, 1061, 404 N.Y.S.2d 147, 148 (2d Dep't 1978). The appointment of a receiver under § 5228(a) is a matter of judicial discretion. *See* 6 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 5228.04, at 52–497 (1991).

█ It was well within the discretion of the district court in the present case to determine that a traditional sale by the sheriff at auction to the highest bidder, with no supervision by a court officer,

would not suffice to protect the government's interests. In its Receiver Order, the district court noted that "[e]xigent circumstances [had been] created by the predatory activities of Michael Vulpis and others," damaging and threatening further damage to the business of Rosedale, one of the corporate defendants. The record reveals that Michael Vulpis, Anthony Vulpis's father and former state receiver of Rosedale, who also signed the Agreement on behalf of Rosedale, was held in civil contempt in August 1991 and in criminal contempt in November 1991 for those acts. In addition, Dominick Vulpis, Anthony's brother and co-owner of Rosedale who likewise had signed the Agreement, had recently sought to place Rosedale in bankruptcy to put the government on a par with other creditors. *See United States v. Vulpis,* 961 F.2d 368 (2d Cir.1992) (affirming injunction against bankruptcy filing). Further, any sale of the corporate defendants' assets is, under the terms of the Agreement, subject to approval by the government, which has an interest in seeing that the assets are sold to lawful and responsible entities. Thus, though the receiver has the obligation to seek fair value for defendants' assets and not to limit the potential return to the amount of the government's judgment if fair value is greater, there are also nonmonetary interests to be protected. In the present circumstances, we see no abuse of discretion in the district court's determination that appointment of a receiver was desirable.

Nor do we see any indication that the Receiver Order fails to comply with the appropriate statutory requirements. It explicitly directs the receiver to be sworn as required by §§ 5228(a) and 6402, and to keep written accounts as required by §§ 5228(a) and 6404. Defendants have provided no substantial reason for disqualification of the receiver.

## CONCLUSION

We have considered all of defendants' arguments on this appeal and have found them to be without merit. The order of the district court appointing a receiver is affirmed.